QUINN EMANUEL URQUHART & SULLIVAN, LLP
DANIEL C. POSNER (Bar No. 232009)
danposner@quinnemanuel.com
MIKAYLA WASIRI (Bar No. 333890)
mikaylawasiri@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

TODD ANTEN (*pro hac vice* forthcoming)
toddanten@quinnemanuel.com
295 Fifth Avenue, 9th Floor
New York, NY 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for Plaintiff FoodieLand LLC*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

FOODIELAND LLC

Plaintiff,

vs.

FOODEES LLC,

Defendant.

CASE NO. 2:26-cv-12107

**COMPLAINT FOR:**

**(1) FEDERAL TRADEMARK INFRINGEMENT, 15 U.S.C. § 1114**

**(2) FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION, 15 U.S.C. § 1125(a)**

**(3) COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**

**(4) UNLAWFUL, UNFAIR, AND FRAUDULENT BUSINESS PRACTICES, CAL. BUS. & PROF. CODE § 17200 *ET SEQ.***

**JURY DEMAND**

Plaintiff FoodieLand LLC ("FoodieLand"), by and through its undersigned counsel, brings this action against Defendant Foodees LLC ("Foodees LLC"), and alleges, based on its personal knowledge as to its own actions and upon information and belief as to the actions of others, as follows:

## INTRODUCTION

1. FoodieLand owns and produces FOODIELAND®, a ticketed food and beverage festival and night market that it stages throughout the year at major venues across the United States, including the Rose Bowl Stadium in Pasadena, California, the Del Mar Fairgrounds in Del Mar, California, and the Cow Palace in Daly City, California. Tens of thousands of consumers attend each FOODIELAND® event, drawn by FoodieLand's reputation for delivering food and entertainment at a fair and accessible price.

2. Starting with a single event in Berkeley, California, in 2019, FoodieLand has spent the past seven years growing its business into the nation's leading multi-state touring festival and night market focused on food. FoodieLand has since built the country's largest network of independent food and vendor relationships, and many of its consumers return year after year for a premium experience at an accessible price.

3. In connection with promoting its various touring festivals around the country, FoodieLand uses the FOODIELAND® trademark—a direct name and design that tells consumers at a glance exactly what kind of experience awaits them:

FOODIELAND

FOODIELAND

4. FoodieLand has spent many years and substantial resources building the FOODIELAND® brand and the goodwill that consumers associate with it.

5. Defendant Foodees LLC is a different story. For its first three years, Foodees LLC ran modest-sized, regional food-truck events in small towns called the

"Foodees Food and Culture Festival." But by the beginning of early this year, on information and belief, Foodees LLC began to operate a competing food festival under the name FOODEESFEST, marketed at www.foodeesfest.com as a "touring Food & Culture Festival" that features food vendors, artisans, and retail vendors. Foodees LLC's "FOODEESFEST" has thus evolved from a food-truck-only event into a full-fledged festival featuring tent food vendors alongside retail and artisan vendors—the exact same format as FoodieLand's FOODIELAND® events.

6. Defendant's mark "FOODEESFEST" is confusingly similar—indeed, nearly identical to—FoodieLand's FOODIELAND® mark: The marks share a near-identical dominant first element rooted by the same four-letter word (FOODIE vs. FOODEES), sounding identical except for pluralization, followed by a four-letter word that conveys a confusingly similar concept of a large event space (LAND vs. FEST). Moreover, the marks as they appear in the marketplace are confusingly similar, with both rendered in similar sans-serif, two-tone fonts with the dominant FOODIE/FOODEES portion in bold:

| FOODIELAND® marks | Foodees LLC's infringing mark |
|---|---|
| FOODIELAND<br>FOODIELAND | FOODEESFEST |

7. Foodees LLC and its FOODEESFEST events have no relationship with FoodieLand or its FOODIELAND® events, and have never been authorized by FoodieLand to use FoodieLand's trademarks.

8. Foodees LLC's copying of FoodieLand's brand extends to FoodieLand's website. FoodieLand launched its current website, www.foodielandnm.com, on October 13, 2025. Beginning in January 2026, on information and belief, Foodees LLC rebuilt its website to replicate FoodieLand's navigation structure, page layouts, event card format, FAQ design, footer pages, and URL architecture—none of which

existed on Foodees LLC's prior website. Indeed, Foodees LLC's redesigned website has gone so far as to copy—nearly verbatim—substantial portions of the text on FoodieLand's website.

9. Foodees LLC has also timed its FOODEESFEST events to confuse and mislead FoodieLand's customers. In Charlotte, North Carolina, for example, Foodees LLC held its FOODEESFEST 2026 event just one week before FoodieLand's own event at Charlotte Motor Speedway, causing consumers, vendors, and sponsors in that market to encounter both brands in close temporal proximity under confusingly similar marks. It worked: at FoodieLand's event, at least one consumer showed up holding a FOODEESFEST ticket, and consumers online mixed up the two festivals' dates.

10. FoodieLand does not object to competition in the food festival market—there is room for more than one touring festival. What FoodieLand objects to is impersonation: adopting a near-identical name and logo, copying FoodieLand's website line by line, and scheduling events to intercept and confuse the consumers FoodieLand spent years building. In short, Foodees LLC has tried to confuse consumers about its association with FoodieLand, and to benefit from the goodwill and success that FoodieLand had worked hard to generate in its mark.

11. FoodieLand brings this action to stop Foodees LLC's ongoing infringement of the FOODIELAND® intellectual property, to recover for the harm Foodees LLC has caused, and to protect the consumers and vendors who have been and continue to be confused by Defendant's conduct.

## THE PARTIES

12. Plaintiff FoodieLand LLC is a limited liability company organized and existing under the laws of the State of California, with its principal place of business in Monrovia, California. FoodieLand produces FOODIELAND® food festivals throughout the United States.

13. On information and belief, Defendant Foodees LLC is a limited liability company organized and existing under the laws of the State of North Carolina, with its principal place of business at 9901 Travertine Trail, Davidson, North Carolina 28036. Foodees LLC owns and operates the food festival business marketed under the name "FoodeesFest" and the website located at www.foodeesfest.com. Foodees LLC was formed on or about February 23, 2023.

## JURISDICTION AND VENUE

14. This action arises under the Lanham Act, 15 U.S.C. §§ 1114 and 1125. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

15. This Court has supplemental jurisdiction over FoodieLand's related state statutory and common law claims pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy.

16. This Court has personal jurisdiction over Foodees LLC because, on information and belief, Foodees LLC transacts and solicits business in this State, directs its marketing to consumers and vendors in this State, and has committed the unlawful acts complained of herein in this State. Among other things, on information and belief: Foodees LLC's website and marketing are accessible to and target consumers and vendors in California; Foodees LLC has solicited business from California-based vendors, including by contacting current FoodieLand vendors Potato Hut, Flavorz, and SoullGoodEats directly through social media; FOODEESFEST events have included California-based vendors such as Babe Beverages (San Diego, California) and Saucey Oysters & BBQ (Sacramento, California); and Foodees LLC's conduct has caused harm to FoodieLand, which resides in this State, and to vendors and consumers who reside in this State. FoodieLand's claims arise out of and relate to these California-directed activities.

17. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to FoodieLand's claims occurred in this

District and a substantial part of the harm was suffered in this District. FoodieLand resides and maintains its principal place of business in this District, in Monrovia, and stages FOODIELAND® events in this District, including at the Rose Bowl Stadium in Pasadena. Foodees LLC's infringing conduct causes FoodieLand to suffer reputational harm, lost and deterred sales, and other injury at its principal place of business in this District.

18. Foodees LLC has thus established minimum contacts with this State and purposefully availed itself of the privilege of conducting activities in California and in this District, and the exercise of jurisdiction over Foodees LLC comports with traditional notions of fair play and substantial justice.

## FACTUAL ALLEGATIONS

### FoodieLand Produces the FOODIELAND® Festival

19. FoodieLand has been producing large-scale, ticketed food and beverage festivals since 2019, when it staged its first FOODIELAND® event in Berkeley, California. That first event alone drew thousands of attendees, and FoodieLand kept growing from there. FoodieLand expanded quickly beyond California, and its footprint has kept growing every year since: FoodieLand's touring schedule today spans eight states and more than a dozen cities—California, Nevada, Arizona, Oregon, Georgia, Tennessee, North Carolina, and Texas—and FoodieLand's expansion continues.

20. FOODIELAND® events are family-friendly, food-centered festivals featuring a curated selection of food and beverage vendors, music, and community programming, and FoodieLand has built a substantial following and a reputation for delivering a high-quality experience.

21. Affordability is central to the FOODIELAND® brand. FoodieLand prices admission to be accessible, with general admission tickets commonly priced at approximately $12. FoodieLand has earned consumer goodwill and brand loyalty precisely by pairing a premium event experience with a fair price.

22. FoodieLand has invested substantial sums in advertising and promoting FOODIELAND® events since at least 2019 under its registered and common law marks. FoodieLand spends millions of dollars each year on marketing alone. Through this extensive use, promotion, and registration, FoodieLand has built valuable trademark rights and goodwill in the FOODIELAND Marks (as defined below), which now enjoy substantial commercial success and widespread consumer recognition.

23. FoodieLand launched its current website, www.foodielandnm.com, on October 13, 2025. The website features a distinctive design, navigation structure, and page layout that FoodieLand developed during a comprehensive rebrand it began in November 2023, with full design files built in Figma, a widely used web design platform, beginning April 9, 2025, and a complete version history preserved throughout.

**FoodieLand Owns The FOODIELAND Marks**

24. FoodieLand owns numerous trademarks registered with the United States Patent and Trademark Office ("USPTO"), including those listed in the table below (the "FOODIELAND Registered Marks"). FoodieLand LLC is the registrant and owner of each of the FOODIELAND Registered Marks.

| Registration No. | Mark |
|---|---|
| 7,922,572<br>(Aug. 26, 2025) | FOODIELAND |
| 6,760,903<br>(June 14, 2022) | FOODIELAND<br>NIGHT MARKET |
| 6,038,376<br>(Apr. 21, 2020) | FoodieLand Night Market |

25. FoodieLand's federal trademark registrations are valid and subsisting, and provide Foodees LLC with at least constructive notice of FoodieLand's rights in

the marks and constitute valid prima facie evidence of FoodieLand's ownership of, and the validity of, each mark. True and accurate copies of these registration certificates are attached as Exhibit A.

26. FoodieLand has a federal trademark application pending with the USPTO for which FoodieLand is the applicant and owner, identifying a first use in commerce date of February 28, 2019:

| Application No. | Mark |
|---|---|
| Serial No. 99/770,693 (filed Apr. 17, 2026; published Sept. 22, 2026) | FOODIELAND |

27. FoodieLand also owns common law rights in the FOODIELAND marks above, including for the word marks and design marks for FOODIELAND and FOODIELAND NIGHT MARKET (together with the FOODIELAND Registered Marks, the "FOODIELAND Marks"), by virtue of FoodieLand's extensive and continuous use of the marks in commerce in the United States since at least as early as 2019. This includes FoodieLand's distinctive stylized two-tone logo, consisting of the word "FOODIELAND" rendered in bold contrasting typography, including FOODIELAND FOODIELAND and FOODIELAND (the "FOODIELAND Design Mark"). The FOODIELAND Marks are valid and subsisting.

28. On information and belief, Foodees LLC owns no federally registered marks or pending federal trademark applications.

29. FoodieLand has used each of the FOODIELAND Marks in interstate commerce and, on information and belief, did so before Foodees LLC commenced its use of any confusingly similar marks in connection with Foodees LLC's events and marketing under its FOODEESFEST brand. FoodieLand has used the FOODIELAND Marks in connection with FOODIELAND® events held in California and throughout the United States.

30. FoodieLand has staged FOODIELAND® events not only in California but at venues across multiple states, extending the geographic reach of the FOODIELAND Marks well beyond any single market. FoodieLand's California venues alone include the Rose Bowl Stadium in Pasadena, the Del Mar Fairgrounds in Del Mar, and the Cow Palace in Daly City—each drawing tens of thousands of attendees per event weekend. FoodieLand spends millions of dollars each year on advertising alone. Consumers, vendors, and sponsors in each of these markets have encountered the FOODIELAND Marks in connection with FOODIELAND® events, extending consumer recognition of the marks across the geographic areas in which FoodieLand operates. FoodieLand sells admission to FOODIELAND® events through the Eventbrite platform and venue-specific authorized ticketing systems, making FOODIELAND®-branded tickets available to consumers nationwide.

31. The FOODIELAND Marks have each acquired secondary meaning and are widely recognized by consumers as identifying FoodieLand as the single source of FOODIELAND® events.

32. The FOODIELAND Marks are inherently distinctive or, at a minimum, have acquired distinctiveness, are strong, and are entitled to a broad scope of protection. FoodieLand has the exclusive right to use the FOODIELAND Marks in connection with the production, promotion, and ticketing of FOODIELAND® events.

**Foodees LLC And Its Infringing Conduct**

33. On information and belief, Foodees LLC was formed on or about February 23, 2023, and staged its first event the following month: a food-truck gathering in Easley, South Carolina, a town of roughly 23,000 people. For nearly three years afterward, Foodees LLC continued running similarly small, regional food-truck events throughout the Carolinas and Georgia, advertised as the "Foodees Food and Culture Festival" on platforms like Eventbrite. On information and belief, only around late 2025 or early 2026—around the same time it began using the term FOODEESFEST and rebuilding its website to copy FoodieLand's website—did

Foodees LLC expand beyond that footprint. Foodees LLC now describes itself as operating "a touring Food & Culture Festival built to bring people together through food trucks, artisans, and unforgettable weekend energy," offering "a curated mix of vendors, local flavor, and community vibes."

34. Rather than grow its food-truck business on its own merits, Foodees LLC instead rode the coattails of FoodieLand's hugely successful operations. Foodees LLC abandoned its food-truck-only format in favor of the tent-vendor model FoodieLand had already built, and for which the FOODIELAND Marks are well known. Foodees LLC's own event pages now advertise "40+ food vendors, dozens of crafters and artisans."

35. Foodees LLC now operates its events under the name "FOODEESFEST," which it identifies as "FoodeesFest" or "FOODEESFEST," as well as in a stylized two-tone sans-serif logo, with the "FOODEES" portion in bold, directly next to "FEST" in a second contrasting tone (the "Infringing Design Mark"). Foodees LLC's Infringing Design Mark thus adopts a confusingly similar format as FoodieLand's registered FOODIELAND NIGHT MARKET® mark, as well as the FOODIELAND Design Mark.

| FOODIELAND Marks | Foodees LLC's Infringing Design Mark |
|---|---|
| FOODIELAND<br>FOODIELAND<br>FOODIELAND<br>FOODIELAND NIGHT MARKET | FOODEESFEST |

36. The similarities are undeniable: As to the word marks alone, the first dominant portions of each mark—FOODIE and FOODEES—visually are virtually indistinguishable, both using the same term for a lover of food, merely replacing an "i" with an "e" and pluralizing the term, identical in sound and meaning. And as to the secondary part of each mark—LAND and FEST—each is four letters long and conveys the same concept of a large outdoor event or gathering. The names are close enough that FoodieLand's own customers call FoodieLand's events by a Foodees-sounding name—for example, in messages to FoodieLand through Eventbrite, purchasers of tickets to FoodieLand's Charlotte, Memphis, Fort Worth, and Dallas events have referred to FoodieLand's event as the "foodie fest" or "foodiefest." And an Arizona-based food creator who contacted FoodieLand's Phoenix account about a media collaboration opened her message, "Hi Foodie Fest!"

37. The similarities continue as to the parties' respective design marks. In addition to the above textual similarities, both use contrasting two-tone typography (a format FoodieLand has used since at least 2019), and employ similar sans-serif fonts, with the first dominant portion (FOODIE and FOODEES) in bold, followed by a second non-bolded contrasting tone.

38. Foodees LLC's infringing word and design marks are thus confusingly similar to FoodieLand's FOODIELAND Marks. And when consumers encounter Foodees LLC's infringing marks in the marketplace in the ordinary course—not side by side, but separately—consumers are likely to mistakenly confuse the two as to source, affiliation, association, sponsorship, and/or endorsement.

39. On information and belief, Foodees LLC has increased the likelihood of confusion by intentionally timing its events to mislead FoodieLand's customers. In Charlotte, North Carolina, for example, Foodees LLC held its FOODEESFEST event at Charlotte Premium Outlets from September 11 to 13, 2026—just one week before FoodieLand's own FOODIELAND® event at Charlotte Motor Speedway from September 18 to 20, 2026. FoodieLand publicly announced its Charlotte Motor

Speedway dates on December 12, 2025, more than nine months before the event, and began running paid advertisements for the event on January 9, 2026. On information and belief, Foodees LLC—which follows multiple FOODIELAND® social media accounts—scheduled its Charlotte event with knowledge of FoodieLand's previously announced dates. On October 17, 2025, Foodees LLC posted its 2025–2026 festival dates on Instagram, which included ***no Charlotte event***. On December 23, 2025, eleven days after FoodieLand's own announcement, Foodees LLC posted a new festival schedule, which now included Charlotte in September 2026. On information and belief, this practice is ongoing and is at risk of continuing as FOODEESFEST events enter new markets where FoodieLand already operates.

40. The parties market their events through the same or similar channels. Both use their websites and social media pages as their primary marketing platforms; both operate social media accounts to promote events and engage consumers; and both solicit vendors and sponsors through online applications. On information and belief, Foodees LLC's Instagram account ("@foodeesfest") follows multiple FOODIELAND® city-specific social media accounts, as exemplified below:



41. Vendors and sponsors who search for food festival opportunities online are likely to encounter both brands through the same channels and platforms. Indeed, at least four vendors—Chef Carmen HTX, Bites & Cream, Hana Hou Shave Ice, and Hot Bamboo—have each participated as vendors at ***both*** a FOODIELAND® event and a FOODEESFEST event.

42. The parties compete for the same consumers, vendors, and sponsors. California-based vendors who participate in food festivals across the country, including in markets where Foodees LLC operates, are among the audiences exposed to both brands. For example, Babe Beverages (San Diego, California) and Saucey Oysters & BBQ (Sacramento, California) have each participated as vendors at FOODEESFEST events while maintaining a presence in the California festival circuit, and Saucey Oysters & BBQ has sold at FoodieLand's own Berkeley, California, FOODIELAND® event. On information and belief, Foodees LLC has tried to solicit current FoodieLand California-based vendors such as Potato Hut, Flavorz, and SoullGoodEats to participate at one or more FOODEESFEST events. These vendors, in selecting events at which to participate, are likely to confuse FOODEESFEST with FOODIELAND®, or to mistakenly believe that FOODEESFEST is affiliated with, or operates under license, endorsement, or permission from, FoodieLand.

43. FOODIELAND® general admission tickets are priced at approximately $12. Foodees LLC's FOODEESFEST events are, on information and belief, free to attend or offered at comparably modest price points. Consumers selecting which food festival to attend at these price points do not exercise the degree of purchasing care associated with more expensive or specialized goods, and are more likely to be confused by the similarity of the parties' names and marks.

44. Foodees LLC shows every sign of continuing to expand its FOODEESFEST brand into FoodieLand's markets. FoodeesFest began as a regional touring event in the Southeast, but has since expanded into Texas, a market

FoodieLand has occupied since April 2024. That geographic expansion mirrors Foodees LLC's earlier shift from a food-truck-only format to FoodieLand's own tent-vendor model: in geography and format, Foodees LLC's trajectory has been to converge on and profit off of FoodieLand's business and goodwill.

**Foodees LLC's Website Further Demonstrates Its Intent To Benefit From FoodieLand's Goodwill**

45. In addition to Foodees LLC's adoption of confusingly similar word and design marks, its pattern of marketing conduct—*e.g.*, its change in event name to resemble FoodieLand, its post-launch reconstruction of FoodieLand's website, and its scheduling of events in FoodieLand's cities immediately before FoodieLand's own events—evidences its intent to benefit from the goodwill and consumer recognition associated with the FOODIELAND Marks.

46. Before January 2026, Foodees LLC's website bore no structural resemblance to FoodieLand's: it featured a simple four-item navigation menu and its page architecture did not resemble FoodieLand's website. FoodieLand launched its redesigned website on October 13, 2025. By January 14, 2026, Foodees LLC had begun redesigning its own website. And by March 31, 2026—as confirmed by Wayback Machine captures—Foodees LLC's FOODEESFEST website had adopted FoodieLand's full navigation structure—including, *e.g.*: (a) a Locations dropdown, Lineup page, and Join Us page; (b) two-column event cards featuring photo, city, venue, date, and button; (c) a dark FAQ accordion; and (d) a footer set of pages at the same URLs as FoodieLand's own footer pages. Foodees LLC's privacy policy and cookie policy pages bear "last updated" dates of March 5 and 6, 2026, respectively.

47. The below images illustrate the repeated similarities that demonstrate Foodees LLC's close monitoring of FoodieLand's website, and its attempt to mirror as many elements as possible. For example, Foodees LLC's "Join Us" page reproduces, nearly word for word, three card descriptions from FoodieLand's "Join Us" page, in the same order, using nearly identical sentence openers:

| FoodieLand "Join Us" text | Foodees LLC's "Join Us" text |
|---|---|
| **Vendors**<br>Share your food, drinks, or goods with our community of food lovers. | **Vendors**<br>Share your food, drinks, or unique goods with thousands of hungry festival-goers. … |
| **Partners**<br>Showcase your brand to thousands of attendees across multiple cities. | **Sponsorship**<br>Put your brand in front of thousands of attendees across multiple cities … |
| **Press & Media**<br>Cover FoodieLand and get exclusive access to our events. | **Press & Media**<br>Cover FoodeesFest and receive exclusive media access to our events … |

**FoodieLand "Join Us" Page**




**Foodees LLC's "Join Us" Page**



48. Similarly, Foodees LLC's vendor lineup page adopts a layout nearly identical in effect to FoodieLand's. Like FoodieLand's, it groups vendors beneath a full-width, collapsible category banner—"Food & Drinks" on FoodieLand's site, "Food Vendors" on Foodees LLC's—and presents each vendor in a grid of drop-shadowed cards, each with a photograph at the top, the vendor's name in bold beneath it, and a short list of the vendor's menu items below that:

**FoodieLand Vendor Lineup Page**




**Foodees LLC Vendor Lineup Page**



49. These similarities confirm Foodees LLC's intent to capitalize on and trade upon FoodieLand's intellectual property, including the FOODIELAND Marks.

50. As an additional example, the footer pages that appeared on Foodees LLC's website in March 2026 are located at the identical URLs as FoodieLand's own footer pages: /ticket-terms-and-conditions, /privacy-policy, /cookie-policy, /terms-of-service, /accessibility-statement, /join-us, /lineup, and /events. None of these existed on the prior versions of Foodees LLC's website.

51. Foodees LLC's event pages also incorporate FoodieLand's distinctive "Join the Experience" label. That phrase, and variations of it—"Be Part of the Experience" and "Step Into the Experience," which were originally phrases used by FoodieLand—appear on both the FoodieLand and Foodees LLC websites.

52. Taken together, this is not circumstantial or coincidental; rather, it is direct, documented evidence that Foodees LLC has built its 2026 rebrand around copying FoodieLand, with the specific intent to trade on, and unfairly benefit from, the goodwill FoodieLand has spent years building in the FOODIELAND Marks.

**<u>Actual Confusion And Resulting Harm To FoodieLand</u>**

53. Foodees LLC's use of the FOODEESFEST mark has already caused actual confusion among consumers, vendors, and content creators.

54. Charlotte, where Foodees LLC staged its event one week before FoodieLand's, provides a ready example. At FoodieLand's September 18–20, 2026 event at Charlotte Motor Speedway, FoodieLand's box office staff encountered at least one attendee who presented tickets that FoodieLand's system rejected as invalid. On inspection, those were tickets to Foodees LLC's FOODEESFEST event, not to a FOODIELAND® event.

55. Public reaction to Foodees LLC's Charlotte event reflects the same confusion. On one TikTok video about the Charlotte events, a viewer asked, "Wait i thought it was the 18-20?!"—FoodieLand's dates—and was told, "That's foodie

land." Elsewhere on TikTok, another viewer asked, "So foodie land and foodie fest are different?"

56. The confusion has spread to the promotion of Foodees LLC's vendors as well. A TikTok post promoting a Charlotte protein-snack vendor—tagged #foodeesfestival—also tagged FoodieLand's Charlotte account, even though that vendor has never participated in a FOODIELAND® event.

57. FoodieLand has no control over Foodees LLC's events, yet consumers who confuse a FOODEESFEST event with a FOODIELAND® event attribute their experience to FoodieLand. That is precisely what has happened in Charlotte. That confusion costs FoodieLand more than reputation: vendor booth space and consumer attendance at any given FOODIELAND® event are both finite, and on information and belief, at least some consumers who would otherwise have purchased tickets to a FOODIELAND® event, and some vendors who would otherwise have applied to vend at one, choose a FOODEESFEST event instead—particularly where, as in Charlotte, Foodees LLC's confusingly similar FOODEESFEST event runs just one week ahead of FoodieLand's own.

58. In September 2026, for example, a TikTok creator posted a review of Foodees LLC's Charlotte FOODEESFEST event—a post which garnered 11,600 views. In the comments, the creator told her followers, "I wish I would've seen something like this before I went. Just trying to save y'all the headache." Her viewers promptly confused the two festivals: one asked, "I thought this wasn't until next week?"—the week of FoodieLand's Charlotte event—and another described her post as "the second review of foodie land that I seen," although the creator had reviewed only FoodeesFest. The creator herself then carried her FoodeesFest experience over to FoodieLand, telling her audience that, as to FoodieLand's event the following weekend, she was "sure it will be the same events" and was "skipping that one." That single exchange cost FoodieLand numerous attendees and attached to FoodieLand's name a negative review of an event it did not produce. Foodees LLC's conduct has

caused, and continues to cause, FoodieLand substantial and irreparable injury, including lost ticket sales, lost vendor relationships, and harm to FoodieLand's reputation and goodwill.

59. FoodieLand has no adequate remedy at law with respect to the reputational harm, loss of goodwill, and market positioning damage caused by Foodees LLC's ongoing infringement. FoodieLand is entitled to injunctive relief.

## FIRST CAUSE OF ACTION

### (Federal Trademark Infringement, 15 U.S.C. § 1114)

60. FoodieLand repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth herein in full.

61. FoodieLand owns valid and subsisting United States federal trademark registrations for the FOODIELAND Registered Marks, including the registrations identified above, and has continuously used the FOODIELAND Registered Marks in commerce throughout the United States.

62. Foodees LLC uses marks confusingly similar to the FOODIELAND Registered Marks in commerce, without FoodieLand's consent, in connection with the advertising, promotion, and operation of food festivals that directly compete with FoodieLand's FOODIELAND® events. Foodees LLC does so by operating under the name "FOODEESFEST," by using word marks and design marks confusingly similar to FoodieLand's FOODIELAND Registered Marks, and by marketing its events through the same channels and to the same audiences as FoodieLand.

63. The FOODIELAND Registered Marks are strong. "FOODIELAND" is an inherently distinctive mark, and FoodieLand's registrations on the Principal Register are entitled to a presumption of validity and distinctiveness. Through FoodieLand's years of nationwide use and promotion, the FOODIELAND Registered Marks have also acquired secondary meaning and are strong, and consumers, vendors, and sponsors throughout the United States associate the FOODIELAND® name and marks with FoodieLand as the single source of FOODIELAND® events.

64. Foodees LLC's FOODEESFEST marks are confusingly similar to the FOODIELAND Registered Marks in sight, sound, and meaning. The overall commercial impressions of the FOODEESFEST marks are confusingly similar to those of the FOODIELAND Registered Marks, particularly as the marks typically are encountered separately in the marketplace rather than in side-by-side comparison.

65. The parties' services are directly competing. Both FOODIELAND® and FOODEESFEST events organize and operate community food festivals featuring food vendors, artisan and craft vendors, retail vendors, and entertainment programming, marketed to the same general consumer audiences. Foodees LLC has shifted its event format to match FoodieLand's, offering the same mix of food, retail, and artisan vendors that defines a FOODIELAND® event.

66. The parties use the same marketing channels—websites, social media, and direct vendor and sponsor solicitation—and target the same consumers, vendors, and sponsors in the food festival market. On information and belief, Foodees LLC monitors FoodieLand's city-specific social media presence and schedules events in FoodieLand's markets.

67. The degree of consumer care in this market is low. FOODIELAND® events are priced at approximately $12, and FOODEESFEST events are free or comparably priced. Consumers selecting a local food festival at these price points are unlikely to exercise the purchasing care associated with more expensive goods or services, increasing the likelihood that they will be confused by the similarity of the parties' names and marks.

68. Foodees LLC is likely to continue expanding into FoodieLand's markets. Foodees LLC has already expanded its FOODEESFEST events from its original Southeast footprint into Texas, where FoodieLand has operated since April 2024, and has already converged with FoodieLand's own event format. That trajectory makes further, and more direct, competition between the parties likely, increasing the risk of consumer confusion.

69. Foodees LLC's adoption and use of its FOODEESFEST marks, its reconstruction of FoodieLand's website text, structure, and URL architecture, and its scheduling of events in FoodieLand's markets immediately before FoodieLand's own events, are evidence that Foodees LLC has acted with knowledge of FoodieLand's prior rights and with the intent to benefit from the goodwill and consumer recognition associated with the FOODIELAND Registered Marks.

70. Foodees LLC's infringement of the FOODIELAND Registered Marks has been and continues to be willful, intentional, and in bad faith. Foodees LLC had at least constructive notice of the FOODIELAND Registered Marks by virtue of their registration on the Principal Register, and on information and belief had actual knowledge of FoodieLand's marks and events.

71. Foodees LLC has profited from its infringement, and FoodieLand has been damaged.

72. Foodees LLC's conduct violates 15 U.S.C. § 1114. FoodieLand is entitled to injunctive relief, to an accounting and disgorgement of Foodees LLC's profits, to FoodieLand's actual damages, to enhanced and treble damages, and to costs and reasonable attorneys' fees.

73. This is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

74. Foodees LLC has caused, and unless enjoined will continue to cause, irreparable injury to FoodieLand that is not fully compensable in monetary damages, including harm to the goodwill and reputation symbolized by the FOODIELAND Registered Marks. FoodieLand is therefore entitled to a preliminary and permanent injunction enjoining Foodees LLC, and all persons acting in concert or participation with it, from any use of the FOODIELAND Registered Marks, or any mark confusingly similar thereto, in connection with the advertising, promotion, or operation of food festivals or events.

## SECOND CAUSE OF ACTION

**(False Designation of Origin and Unfair Competition, 15 U.S.C. § 1125(a))**

75. FoodieLand repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth herein in full.

76. FoodieLand has continuously used the FOODIELAND Marks in United States commerce since at least 2019. FoodieLand owns valid trademark rights, including common law rights dating to at least 2019, in the FOODIELAND Marks, which are superior to any rights Foodees LLC may claim and which reach the entire period of Foodees LLC's conduct.

77. The FOODIELAND Marks are inherently distinctive. In addition, through FoodieLand's years of nationwide use and promotion, the FOODIELAND Marks have acquired secondary meaning and are strong, and consumers, vendors, and sponsors throughout the United States associate the FOODIELAND® name and marks with FoodieLand as the single source of FOODIELAND® events.

78. Foodees LLC's unauthorized use of a mark confusingly similar to the FOODIELAND Marks in interstate commerce constitutes a false designation of origin and a false or misleading representation of fact. Foodees LLC's use of a confusingly similar word mark, and a confusingly similar name and logo—including its use of the Infringing Design Mark—in the same market and through the same channels as FoodieLand, suggests an affiliation with, and sponsorship, endorsement, or approval by, FoodieLand.

79. Foodees LLC's copying of FoodieLand's website text, design, structure, and URL architecture is further evidence of Foodees LLC's intent to trade on FoodieLand's goodwill and to create a false impression of affiliation or common origin. The near-verbatim reproduction of FoodieLand's "Join Us" card descriptions, the adoption of FoodieLand's footer URL set, and the reconstruction of FoodieLand's page layouts, all occurring within months of FoodieLand's website launch, bear on Foodees LLC's intent.

80. Foodees LLC's conduct is likely to cause, and has caused, confusion, mistake, or deception as to the affiliation, connection, or association of Foodees LLC with FoodieLand, and as to the origin, sponsorship, or approval of Foodees LLC's events by FoodieLand, in violation of 15 U.S.C. § 1125(a).

81. Foodees LLC's conduct has been and continues to be willful, intentional, and in bad faith, and Foodees LLC has profited from it while FoodieLand has been damaged.

82. Foodees LLC's conduct violates 15 U.S.C. § 1125(a). FoodieLand is entitled to injunctive relief, to an accounting and disgorgement of Foodees LLC's profits, to FoodieLand's actual damages, to enhanced and treble damages, and to costs and reasonable attorneys' fees.

83. Foodees LLC's conduct renders this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

84. Foodees LLC has caused, and unless enjoined will continue to cause, irreparable injury to FoodieLand that is not fully compensable in monetary damages, including harm to the goodwill and reputation symbolized by the FOODIELAND Marks. FoodieLand is therefore entitled to a preliminary and permanent injunction enjoining Foodees LLC, and all persons acting in concert or participation with it, from any use of the FOODIELAND Marks, or any mark confusingly similar thereto, in connection with the advertising, promotion, or operation of food festivals or events.

## THIRD CAUSE OF ACTION

### (Common Law Trademark Infringement and Unfair Competition)

85. FoodieLand repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth herein in full.

86. FoodieLand has continuously used the FOODIELAND Marks in United States commerce since at least 2019. By virtue of that long-term and exclusive use, FoodieLand owns common law trademark rights in the FOODIELAND Marks that are superior to any rights Foodees LLC may claim.

87. Foodees LLC's conduct, including its unauthorized use of a confusingly similar mark and logo, its false designation of origin, and its misappropriation of FoodieLand's reputation and goodwill, constitutes trademark infringement and unfair competition under the common law of California and other states.

88. Foodees LLC's conduct is likely to cause, and has caused, confusion, mistake, and deception among consumers, vendors, sponsors, and press, as well as injury to FoodieLand's goodwill and reputation.

89. Foodees LLC's conduct demonstrates an intentional, willful, and malicious intent to trade on the goodwill associated with the FOODIELAND Marks and the FOODIELAND® brand.

90. FoodieLand has been harmed as a result of Foodees LLC's conduct and has no adequate remedy at law. FoodieLand is entitled to injunctive relief, an accounting and disgorgement of Foodees LLC's profits, actual damages, and, because Foodees LLC's conduct has been wanton, deliberate, malicious, and willful, punitive damages under California Civil Code § 3294.

## <u>FOURTH CAUSE OF ACTION</u>

### (Unlawful, Unfair, and Fraudulent Business Practices, Cal. Bus. & Prof. Code § 17200 *et seq.*)

91. FoodieLand repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth herein in full.

92. Foodees LLC has engaged in unlawful, unfair, and fraudulent business acts and practices in violation of California Business and Professions Code § 17200 *et seq.*

93. Foodees LLC's practices are unlawful because they violate, among other laws, the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), and the common law, as alleged above.

94. Foodees LLC's practices are unfair because the harm they cause to FoodieLand and to consumers far outweighs any legitimate business utility. Foodees

LLC's adoption of a confusingly similar name and logo, its copying of FoodieLand's website text and structure, and its scheduling of events in FoodieLand's markets immediately before FoodieLand's own events cause concrete harm to FoodieLand's goodwill, market position, and relationships with vendors, sponsors, and consumers. The conduct also violates the public policy embodied in the consumer-protection and trademark laws identified above.

95. Foodees LLC's practices are fraudulent because they are likely to deceive members of the public—including consumers, vendors, and sponsors—as to the affiliation, connection, or association of Foodees LLC and/or FoodeesFest with FoodieLand, and as to the origin, sponsorship, or approval of Foodees LLC's events by FoodieLand, as alleged above.

96. FoodieLand has suffered injury in fact and lost money or property as a result of Foodees LLC's conduct. FoodieLand is entitled to injunctive relief, any restitution available under California law, and such other relief as the Court deems proper.

**RELIEF SOUGHT**

WHEREFORE, Plaintiff hereby requests that this Court order as follows:

a. An order enjoining and restraining Foodees LLC, its officers, members, directors, agents, servants, employees, successors, licensees, representatives, assigns, and all persons acting in concert or participation with them, from:

(i) Using or displaying the FOODIELAND Marks, or any name, designation, or depiction substantially or confusingly similar thereto, in connection with the advertising, promotion, or operation of food festivals or events;

(ii) Using any name, mark, or logo that incorporates the term "Foodees," "FoodieLand," "Foodie," or any confusingly similar variation, in connection with food festivals or events;

(iii) Making any false or misleading representation as to the source, affiliation, sponsorship, or endorsement of FoodeesFest or its events, or otherwise competing unfairly with FoodieLand or infringing the FOODIELAND Marks; and

(iv) Assisting, aiding, or abetting any other person or business entity in engaging or performing any of the activities referred to in subparagraphs (i) through (iii) above;

b. An order directing Foodees LLC to file with the Court and serve on FoodieLand, within thirty (30) days after entry of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Foodees LLC has complied with the injunction;

c. An accounting and disgorgement of Foodees LLC's profits arising from the conduct complained of herein, as provided under 15 U.S.C. § 1117 and the common law;

d. An award of FoodieLand's actual damages and lost profits;

e. An award of enhanced and treble damages pursuant to 15 U.S.C. § 1117;

f. An award of nominal damages as available by law where appropriate;

g. An award of punitive and exemplary damages as available by law, including under California Civil Code § 3294;

h. An award of FoodieLand's reasonable attorneys' fees and costs incurred in this action as available by law, including under 15 U.S.C. § 1117;

i. An award of pre-judgment and post-judgment interest; and

j. Such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff respectfully requests a jury trial on all issues triable thereby.

DATED: October 16, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Daniel C. Posner*

DANIEL C. POSNER (Bar No. 232009)
danposner@quinnemanuel.com
MIKAYLA WASIRI (Bar No. 333890)
mikaylawasiri@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

TODD ANTEN (*pro hac vice* forthcoming)
toddanten@quinnemanuel.com
295 Fifth Avenue, 9th Floor
New York, NY 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for Plaintiff FoodieLand LLC*